IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANDRA GARCIA,

      Plaintiff,

v.                                                                     Civ. No. 19-510 GBW

ANDREW SAUL,
*Commissioner of the*
*Social Security Administration*,

      Defendant.

## ORDER GRANTING REMAND

This matter comes before the Court on Plaintiff's Motion to Reverse and/or Remand the Social Security Agency ("SSA") decision to deny Plaintiff's claim. *Doc. 21*. For the reasons explained below, the Court GRANTS Plaintiff's motion and REMANDS the case to the Commissioner for further proceedings consistent with this opinion.

**I.**     **PROCEDURAL HISTORY**

Plaintiff filed an initial application for Social Security Disability Insurance benefits ("SSDI") on July 8, 2014, alleging disability beginning March 31, 2014. Administrative Record ("AR") at 71. Plaintiff's application was denied on initial review on November 4, 2014, and again on reconsideration on July 30, 2015. AR at 82–83, 93–94. On February 28, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), who denied Plaintiff's claim by a decision dated May 30, 2017. AR at 11–23.

Plaintiff sought review by the Appeals Council and sent additional medical evidence dating from 2013 to 2015.  AR at 1–2.  On September 20, 2017, the Appeals Council denied the request for review and found that the additional evidence did not show "a reasonable probability that it would change the outcome of the decision."  *Id.*  Plaintiff filed suit in federal court seeking reversal of the SSA's decision.  AR at 816.  On October 2, 2018, the court granted remand, finding that the Appeals Council had erred in declining to consider the additional evidence.  AR at 816–24.  The court declined to address the other points of error alleged by Plaintiff, "in order to allow the Appeals Council the first opportunity to evaluate the ALJ's decision in light of the complete record."  AR at 824 (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004), and *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)).

On November 5, 2018, the Appeals Council remanded the case to an ALJ for further proceedings.  AR at 828.  A new hearing was held before a different ALJ on February 27, 2019.  AR at 724–83.  The ALJ issued an unfavorable decision on March 29, 2019.  AR at 668–89.  The present suit, seeking reversal and remand of the second ALJ's decision, was filed on June 4, 2019.  *Doc. 1*.

II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence"

2

and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotations omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800.  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id.* at 1010.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III.   ALJ Evaluation

#### A. Legal Standard

For purposes of Social Security Disability Insurance benefits, an individual is disabled when he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he or she is not engaged in "substantial gainful activity;" (2) he or she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his or her impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he or she is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1024. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those

work demands which have a bearing on the medically established limitations.'" *Id.* (quoting Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (S.S.A. 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. *See Grogan*, 399 F.3d at 1261. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity, age, education, and work experience. *Id*.

### B.  The ALJ's Decision

On March 29, 2019, the ALJ issued a decision denying Plaintiff's application for SSDI benefits. *See* AR at 671–82. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ noted that Plaintiff earned wages in excess of $8,000 during the first half of 2018 but concluded that "this work activity may not have risen to the level of substantial gainful activity." AR at 673.

At step two, the ALJ found that Plaintiff had the following severe impairments: depression, bipolar disorder, anxiety, and post-traumatic stress disorder. AR at 674. The ALJ found that Plaintiff's history of substance abuse and gastrointestinal disorder were not severe impairments. AR at 675. At step three, the ALJ found that Plaintiff did

not have an impairment or combination of impairments that met the severity of any listed impairment. *Id*.

At step four, the ALJ determined that Plaintiff had the RFC to perform work with no exertional limitations but several nonexertional limitations, described as follows:

> she is limited to simple routine tasks and simple work-related decisions; occasional interactions with supervisors and co-workers; less than occasional/infrequent interactions with the general public; she is able to tolerate few changes in a routine work setting; and any time off task would be accommodated by normal breaks.

AR at 677. Also at step four, the ALJ found that Plaintiff's RFC did not allow her to return to her past work as a medical technician. AR at 680. Finally, at step five, the ALJ concluded that Plaintiff had the RFC to perform jobs that exist in significant numbers in the national economy, including work as a salvage laborer (40,000 jobs nationally), store laborer (19,000 jobs nationally), collator operator (12,000 jobs nationally), marker (30,000 jobs nationally), addresser (57,000 jobs nationally), and cutter-paster (3,800 jobs nationally). AR at 681.

### IV. Parties' Positions

Plaintiff asserts that the ALJ erred by (1) finding that Plaintiff's nausea and vomiting were not severe impairments for which additional limitations were required; (2) failing to adequately consider the reports of Kathryn Fraser, M.D., and Gloria Dixon, C.N.P.; (3) failing to assign weight to the opinion of state agency consultant Dr. Scott

Walker; and (4) assigning little weight to the opinion of Psychiatric Mental Health Nurse Practitioner Debra Stanger. *See generally doc. 21*.

Defendant responds that the ALJ's decision should be affirmed, because (1) any step two error was harmless because the ALJ proceeds through subsequent steps; (2) the ALJ's findings were supported by substantial evidence; and (3) the ALJ properly weighed and considered all medical opinions. *See generally doc. 25*.

Ultimately, the Court finds that the ALJ failed to consider the evidence of Plaintiff's nausea and vomiting in his RFC analysis. Because this error is a sufficient basis to remand for a new hearing, the Court declines to address Plaintiff's other arguments.

V.   **ANALYSIS**

At the second step of an ALJ's analysis, the ALJ must determine whether the claimant has established that she has a medically severe "impairment or combination of impairments." 20 C.F.R. § 404.1520(c). Even if an ALJ errs at step two of the evaluation process, the error will be rendered harmless if the ALJ proceeds to consider steps three through five. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ . . . proceeded to the next step of the evaluation sequence."); *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009) (holding that an ALJ need find only one severe impairment at step two, and explaining that "step

two is designed to weed out . . . those individuals who cannot possibly meet the statutory definition of disability") (internal quotations omitted).

At steps four and five, "the ALJ is required to consider the effect of *all* medically determinable impairments, severe or not, in calculating the claimant's RFC." *Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011) (unpublished). A conclusion that a given impairment is non-severe at step two does not permit an ALJ to disregard that impairment when determining the RFC at steps four and five. *Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013). As part of the RFC determination, the ALJ must "consider all of the individual's symptoms . . . and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). The symptom evaluation is a two-step process, in which the ALJ first determines "whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms" and then evaluates the "intensity, persistence, and limiting effects" of the symptoms. *Id.* at *3–4.

At step two, the ALJ found that Plaintiff did not have a severe gastrointestinal impairment. AR at 675. The ALJ noted that Plaintiff had her gallbladder removed in May 2013, before the alleged disability onset date. *Id*. After Plaintiff's recovery from the cholecystectomy, the ALJ found "no evidence of ongoing complaints or treatment

for any gastrointestinal issues." *Id*.  The ALJ proceeded through steps three and five on the basis of Plaintiff's mental impairments, without any further discussion of any gastrointestinal symptoms.  *Id.* at 675–680.  Because the ALJ proceeded through all the steps of the sequential evaluation, his decision not to treat Plaintiff's nausea and vomiting as a severe impairment at step two cannot constitute reversible error.  *See Carpenter*, 537 F.3d at 1266.  However, Plaintiff argues that the ALJ's failure to consider her nausea and vomiting was *also* a step-four/-five error, because these impairments should have been factored into the RFC.  *Doc. 21* at 22; *doc. 27* at 3.

Medical records from after Plaintiff's cholecystectomy establish that she continued to complain of gastrointestinal symptoms.  In November 2013, Plaintiff presented at the emergency room with complaints of nausea and vomiting lasting for four days.  AR at 333–37.  After several tests, Plaintiff was discharged with a prescription for Zofran (an antiemetic).  AR at 336.  In December 2013, Plaintiff presented at psychiatric urgent care complaining of anxiety and depression.  AR at 953–55.  Gloria Dixon, C.N.P., interviewed Plaintiff and described her going "in [and] out of this office during this interview to go to the bathroom because she [felt like] she was going to vomit."  AR at 953.  In May 2014, Plaintiff presented at the emergency room with complaints of nausea and vomiting.  AR at 327–32.  Attending staff observed Plaintiff vomiting and experiencing fever, chills, and epigastric tenderness and pain.

AR at 327.  Prescription records show that Plaintiff received prescriptions for Zofran in June and July 2014.  AR at 430.  In October 2014, during a consultative psychiatric examination with Dr. Paula Hughson, Plaintiff reported constant nausea and stated that Zofran causes excessive sedation.  AR at 445.  In September 2015, Plaintiff underwent a clinical assessment in which she reported experiencing flashbacks that cause her to get sick to her stomach.  AR at 507.  In November 2015, Plaintiff presented at the hospital for suicidal thoughts.  AR at 550–52.  She was administered Zofran in addition to a sedative and an antipsychotic.  AR at 552.  In her testimony, Plaintiff stated that she experiences nausea on a daily basis.  AR at 746.  In summary, the evidence plainly establishes ongoing complaints and treatment for gastrointestinal issues after Plaintiff's cholecystectomy in May 2013.  Although the ALJ's statement to the contrary does not in and of itself constitute reversible error (because it was a step-two finding), his failure to address any of this evidence in his RFC determination does.  *See Wells*, 727 F.3d at 1068–69.

Defendant raises various arguments why the ALJ did not err in failing to discuss this evidence.  Defendant states that "while Plaintiff complained of nausea and vomiting, diagnostic studies were normal and providers ultimately attributed Plaintiff's symptoms to anxiety, not a physical condition."  *Doc. 25* at 9.  As symptoms of anxiety, Defendant argues, Plaintiff's nausea and vomiting were subsumed in the ALJ's finding

of severe anxiety.  *Id*.  The Court agrees that the medical evidence clearly ties Plaintiff's nausea and vomiting to her mental impairments, but it does not follow that these symptoms were not required to be separately addressed in the ALJ's RFC analysis.  To the contrary, SSR 16-3p requires the ALJ to consider the potential limiting effects of all symptoms indicated by the evidence.  *See* 2016 WL 1119029, at *11–12.

Defendant argues that the ALJ's symptom evaluation was nonetheless adequate because he found that she was capable of engaging in various activities "[d]espite her psychiatric impairments and symptoms."  *Doc. 25* at 9–10.  The ALJ's findings in the symptom evaluation are required to be "closely and affirmatively linked" to substantial evidence in the record.  *See Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988); *Romo v. Comm'r, Soc. Sec. Admin*, 748 F. App'x 182, 187 (10th Cir. 2018) (unpublished).  The ALJ made no findings as to the evidence of gastrointestinal symptoms.  In fact, he did not appear aware that such evidence existed.  Whether Plaintiff's various capabilities, such as caring for her own personal needs and following written instructions, *doc. 25* at 10, contradict her reports of nausea and vomiting is a question that requires "specific weighing of the evidence" by the ALJ.[1]  *See Clifton*, 79 F.3d at 1009.  The Court cannot make its own factual findings on this matter.

---

[1] The same may be said for Plaintiff's ability to work part-time (for a brief period until Plaintiff was fired for repeatedly locking herself in the bathroom during the workday, AR at 740–43), upon which Defendant also relies.  *Doc. 25* at 9–10.

11

Defendant next argues that some of the evidence of vomiting and nausea predates the alleged onset date of disability and that lapses in treatment indicate a lack of severity. *Doc. 25* at 10–11. Whether either of these arguments has merit is a question for the factfinder to resolve in the first instance. Because the ALJ did not discuss or even acknowledge the evidence of gastrointestinal symptoms, these arguments constitute impermissible post hoc rationalizations. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Moreover, neither of these arguments is so incontrovertible as to render the ALJ's error harmless. *See id.* (distinguishing post hoc rationalizations from harmless errors where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). While it is true that some of the relevant evidence predates the alleged onset date, much of it is from the period of disability. Additionally, while lapses in treatment *may* be a reason to discount symptoms, *see White v. Berryhill*, 704 F. App'x 774, 778 (10th Cir. 2017) (unpublished), that is not the only possible conclusion. For example, lapses in treatment may indicate an improvement in symptoms during the period of disability (which would *not* preclude a finding of disability). *See, e.g., Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (discussing the steps required to find disability for a closed period). To draw any conclusions about Plaintiff's gastrointestinal symptoms from the dates of treatment,

the Court would have to substitute its own judgment for the ALJ's absent analysis, which it cannot do. *See Bowman*, 511 F.3d at 1272.

Finally, Defendant argues that the ALJ should be taken at his word when he states that he "considered all symptoms." Doc. 25 at 11 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)). The Tenth Circuit has made it a general practice "to take a lower tribunal at its word when it declares that it has considered a matter." *Flaherty*, 515 F.3d at 1071 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). Here, however, there is a clear basis to believe that the ALJ did not consider this particular matter. *See Conkle v. Astrue*, 297 F. App'x 803, 805–06 (10th Cir. 2008) (unpublished) (declining to assume the ALJ considered all the evidence where her decision clearly shows she did not). The ALJ expressly stated that he found "no evidence" of any gastrointestinal symptoms postdating the cholecystectomy. AR at 675. The Court can arrive at no other conclusion but that the ALJ did not consider these symptoms.

Even if the ALJ did consider this evidence, his failure to discuss it was nonetheless erroneous. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010. The ALJ consistently ignored uncontroverted evidence of gastrointestinal symptoms,

which may impact Plaintiff's ability to engage in regular full-time work. Accordingly, the case must be remanded for a fuller consideration of the evidence.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Reverse and/or Remand *(doc. 21)* is GRANTED, and this case is REMANDED to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**